IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| LISA TULLIS, #280 307, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:12-CV-896-WHA |
| ) | [WO] |
| MR. WESSON, ) | |
| ) | |
| Defendant. ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by Plaintiff, an inmate incarcerated at the Julia Tutwiler Prison for Women ["Tutwiler"], in Wetumpka, Alabama. Plaintiff sues Billy Wesson, a welding instructor employed by J.F. Ingram Technical College who teaches at the college's facility located at Tutwiler. Plaintiff alleges that Wesson subjected her to racial discrimination while attending a welding course in violation of her right to equal protection.

Pursuant to the orders of this court, Defendant filed an answer, special report, and supporting evidentiary material addressing Plaintiff's claims for relief. *Doc. Nos. 20, 21*. The court then informed Plaintiff that Defendant's special report may, at any time, be treated as a motion for summary judgment, and the court explained to Plaintiff the proper manner in which to respond to a motion for summary judgment. *Doc. No. 25*. Plaintiff filed responses to the special report. *Doc. Nos. 26-29*.[1] This case is now pending on Defendant's motion for summary judgment. Upon consideration of the motion, the evidentiary materials filed in support thereof,

---

[1] Although Plaintiff filed four separate responses, Document Numbers 27 and 29 are copies of the responses found in Document Numbers 26 and 28.

1

and Plaintiff' opposition to the motion, the court concludes that Defendant's motion for summary judgment is due to be granted.

## I.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (*per curiam*) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the nonmoving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-324.

Defendant has met his evidentiary burden. Thus, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to

properly address another party's assertion of fact as required [by citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it."); *Jeffery*, 64 F.3d at 593-594 (internal quotation marks omitted) (Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact.). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007).

> In civil actions filed by inmates, federal courts must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. Consequently, to survive Defendants' properly supported motions for summary judgment, Plaintiff must produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims for relief. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of*

3

*Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (internal citations omitted). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs likewise cannot create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond his own conclusory allegations challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 323 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the *prima facie* case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts... . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. Ltd., v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986) (internal citations omitted). Where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and establishes the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.); *Waddell v. Valley Forge Dental Associates, Inc*., 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. Here, Plaintiff fails to demonstrate a requisite genuine dispute of material fact against Defendant to preclude summary judgment. *Matsushita*, *supra*.

## II. DISCUSSION

Plaintiff alleges that "Mr. Wesson has his own methods of teaching in which in my opinion is discriminatory with students of color." Plaintiff first asserts specifically that Wesson told her not to use the larger of the gray stick welding rods, but the two white students she sat between in the welding booth "used how many whenever and however they wanted to." Second, she contends that when she was cutting steel off the long-beam in the back of the welding shop, Plaintiff was told not to cut more than two pieces, but when the two white students who sat between her cut theirs into four pieces nothing was said to them. Plaintiff also claims that Wesson exhibited discriminatory conduct when (1) he made various comments about Plaintiff's wasting metal even though the college receives a grant which pays for the raw materials used in the welding class; (2) he raised his voice to Plaintiff when she asked him to demonstrate what she had done wrong with a welding assignment and after she told him that any unfairness or discrimination she felt from him would result in her discussing the matter with the director of the college, Stanley Carter; (3) he almost passed a white student who failed to perform the same welding assignment properly that caused Plaintiff to be "kicked out of school," but another

6

inmate brought the comparison to Wesson's attention; (4) he told Carter at a meeting on July 6, 2012, that Plaintiff refused to work, but students perform no welding after 1:00 p.m. on "Tiddy Friday," and instead clean up the shop; (5) as Plaintiff and Wesson were walking to a meeting in Carter's office, Wesson was walking behind Plaintiff and laughing because he took her quest to become a professional welder as a joke; (6) he met with Plaintiff in his office after a "gay caucasian girl" complained that Plaintiff had rubbed up against her, and the meeting was also attended by the complainant and two other teachers which embarrassed and humiliated Plaintiff; (7) and he attempted to have plaintiff sign an exit from his class form the first day they met, insinuating that a trade other than welding might be better for her. *See Doc. No. 1* at 1-6; *Doc. No. 16* at 1-8.

Wesson denies that he acted in violation of Plaintiff's equal protection rights. In response to her allegations of discriminatory conduct, Wesson states:[2]

> Ms. Tullis' complaint offers but two specific examples of perceived discriminatory actions my part. The first relates to the type of welding rods she was required to use. There are a variety of welding rods having different characteristics including penetration depth, melting temperature, gauge, and compound. However, a standard rod used throughout the welding industry is the 6010 (red) 3/32 gauge welding rod. All first semester students or beginners in the welding program at the Tutwiler facility are required to use the 6010 (red) 3/32 rod to perform their initial assignments. The 6010 (red) 3/32 rod is a deep-penetration, high melting temperature and narrow gauged rod. After developing their basic skills using this type welding rod, students in the Tutwiler program are allowed to progress to the use of different type rods. Ms. Tullis claims that two white students were allowed to use different welding rods to perform their assigned tasks. She does not identify them by name or indicate if they were first

---

[2] Wesson indicates that when Plaintiff entered the summer welding class in May 2012 she was treated as a first semester student because, although she had enrolled in the class the previous semester, she had to be withdrawn due to her violation of institutional regulations. The students in the summer 2012 welding class were a mix of beginners or first semester students (50%) and second, third, and fourth semester students. Plaintiff objected to her designation as a first semester student and wanted credit for time spent in the welding class from the previous semester. Wesson informed Plaintiff that if she could successfully weld in all four positions (a prerequisite for passing the first semester's demonstration of this ability), he would advance her. Plaintiff's attempt to weld in all four positions failed. *Doc. No. 21, Wesson and Carter Affidavits.*

7

semester students. The use of 6010 (red) 3/32 welding rods is a standard practice of the Tutwiler facility welding program and my requiring Ms. Tullis to use this type of rod was in no way discriminatory.

The only other example of perceived discriminatory conduct offered up by Ms. Tullis relates to the number of pieces of steel she was allowed to cut to perform her assignments. The welding program at the Tutwiler facility has a limited budget for teaching materials such as steel. These materials must be conserved and made to last until the end of the semester. Students are directed to cut only the number of pieces of steel that are required for their assignments.

That Ms. Tullis was permitted to use only two pieces of steel for the relevant assignment is a true statement. What Ms. Tullis does not relate is that she actually cut six pieces of steel to perform an assignment that only required two and stacked the six pieces in the corner of her welding booth. As I walked through the welding lab, I noticed the stack of steel pieces in Ms. Tullis' booth. I removed four of the pieces of from the stack and advised her that she only needed two for her assignment. When I did this Ms. Tullis became angry and stated "them bitches better not use my steel." This was typical of the attitude Ms. Tullis brought to class each day. Notwithstanding Ms. Tullis' allegation, white students were not allowed to cut or use more pieces of steel than were required for their assigned tasks. Ms. Tullis was not discriminated based on her race in this regard.

With respect to Ms. Tullis' allegation regarding "Tiddy Friday"(sic) I assume she is referring to the incident of July 6, 2012. After her weld was tested and failed Ms. Tullis was told by me that she could begin re-doing her butt weld assignment on the following Monday. Ms. Tullis was not request[ed] or required to perform welding work after 1 pm on "Tiddy Friday." (sic).

I expressly deny: (1) that I laughed as I and Ms. Tullis walked to Mr. Carter's office on July 6; (2) that Ms. Tullis asked me what she did wrong with her weld; (3) that I passed a white student on an assignment when her weld failed; or (4) that I raised my voice to Ms. Tullis or in any way attempted to prevent her from going to Mr. Carter's office.

The final incident referred to in Ms. Tullis' complaint relates to a complaint made against Ms. Tullis by a "gay" white student. The student in question reported to me that Ms. Tullis had pushed her against a water cooler and made a sexual pass at the student. Following policy, I reported the student's complaint to my supervisor, Mr. Carter. Mr. Carter directed me to call Ms. Tullis and the other student into my office in the presence of my teaching aides to discuss that matter with the hope that Ms. Tullis and the other student could work out their differences. I did what [I] was directed to do by Mr. Carter. The student and Ms. Tullis talked and I believed by that all issues between the two had been resolved. No further incidents or problems were reported to me. In investigating

>the complaint of the white "gay student, I was acting under the direction of [my] supervisor, Mr. Carter.

>*Doc. No. 21, Wesson Affidavit*.

"Despite the tendency of all rights 'to declare themselves absolute to their logical extreme,' there are obviously limits beyond which the equal protection analysis may not be pressed ... . The Fourteenth Amendment 'does not require absolute equality or precisely equal advantages,'... nor does it require the State to 'equalize [prison] conditions.'" *Ross v. Moffitt*, 417 U.S. 600, 611-612 (1974) (footnote omitted) (citations omitted); *Hammond v. Auburn University*, 669 F. Supp. 1555, 1563 (M.D. Ala. 1987) ("The Equal Protection Clause of the Fourteenth Amendment does not require all persons to be treated either identically or equally."). To present a claim of discrimination cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) [s]he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against h[er] based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Department of Corrections,* 467 F.3d 1311, 1318-1319 (11th Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a racially disproportionate impact... . Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp*., 429 U.S. 252, 264-265 (1977). "'Discriminatory purpose' ... implies more than intent as volition or intent as awareness of consequences. It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an

identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote omitted) (citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).

In a case such as the one before the court, an inmate's conclusory allegations are insufficient, as exceptionally clear proof of discrimination is required. *Fuller v. Georgia State Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988). Mere differential treatment of similarly situated inmates, without more, fails to allege a violation of the Equal Protection Clause. *Sweet*, 467 F.3d at 319; *E & T Realty Company v. Strickland*, 830 F.2d 1107 (11th Cir. 1987); *McKleskey v. Kemp*, 481 U.S. 279, 292 (1987) (claims of mere disparity of treatment or even arbitrary administration of state power are insufficient to establish discrimination violative of equal protection).

Since this case is before the court on a properly supported motion for summary judgment, Plaintiff must produce specific, substantial evidence that Wesson intentionally discriminated against her due to her race.[3] *Arlington Heights*, 429 U.S. at 265. Purposeful discrimination can be shown either by direct evidence, *i.e.*, admissions of the defendant, or indirectly by way of circumstantial evidence. *Id.* at 266. A plaintiff, however, cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment, nor is "[t]he mere existence of a scintilla of evidence in support of [her] position" sufficient to avoid summary judgment.

---

[3] To the extent that Plaintiff presents additional claims and/or theories of liability in her opposition to Defendant's special report, the court limits its review to the allegation of racial discriminations set forth in the complaint. *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [her] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Secretary, Florida Dept. of Corrections*, 502 Fed. App'x 905, 909-910 (11th Cir. 2012) (plaintiff may not amend complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton County School District*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (district court correctly refused to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint).

*Anderson v. Liberty Lobby*, 477 U.S. at 252. Instead, a plaintiff must present significant probative evidence to preclude summary judgment in favor of the defendant. *Id*. at 249.

     Regarding Plaintiff's equal protection claims that she was penalized for conduct in which white inmates engaged without any repercussions, she is not entitled to relief. Even if Plaintiff and the white inmates whom she alleges received more favorable treatment were similarly situated, Plaintiff has presented no evidence that racial discrimination or purpose constituted a motivating factor regarding the conduct about which she complains. A showing of disparate impact upon two racially diverse inmates is insufficient to demonstrate an equal protection violation. *E & T Realty*, 830 F.2d at 1114; *Horner v. Kentucky High School Athletic Ass'n*, 43 F.3d 265, 276 (6th Cir. 1994). The arbitrary application of administrative rules likewise does not run afoul of the Constitution. *E & T Realty*, 830 F.2d at 1114. Exact equality is no prerequisite of equal protection of the laws within the meaning of the Fourteenth Amendment." *Norvell v. State of Ill*., 373 U.S. 420, 423 (1963). Here, other than Plaintiff's conclusory allegations that the actions of Wesson were intentionally discriminatory, the record is devoid of any proof that the conduct about which Plaintiff complains occurred because she is African-American.

     Regarding Plaintiff's allegations of discrimination as identified above in the items marked (1)-(7), Plaintiff must show she was similarly situated with another inmate who was treated more favorably, and that her discriminatory treatment arose from a constitutionally protected interest such as race or some other constitutionally protected basis. *Jones*, 279 F.3d at 946-47. Plaintiff must also demonstrate an intentional or purposeful discrimination. *Snowden*, 321 U.S. at 8; *E & T Realty*, 830 F.2d at 1113–14.

     In her contentions described in (1)-(7) above, Plaintiff's complaint concerns her disappointment, anger, embarrassment, and/or humiliation regarding various interactions she had

with Wesson. Plaintiff regards this conduct as actionable unequal treatment. As explained above, however, a disparate treatment claim requires Plaintiff to establish that similarly situated inmates were not similarly treated and that prison officials engaged in invidious discrimination based on race, religion, national origin, poverty, or some other constitutionally protected interest. *See Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992) (the Equal Protection Clause "simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike."); *Jones*, 279 F.3d at 947. Plaintiff identifies no similarly situated inmates who received more favorable treatment from Wesson regarding the matters described in (1)-(7) above and, thus, her "equal protection claim necessarily fails first because [s]he has not shown that [s]he was treated differently from other, similarly situated prisoners." *Sweet*, 467 F.3d at 1318-1319. She has also identified no specific facts regarding the claims (1)-(7) above that would allow the court to make any plausible inference that any of the treatment she allegedly received from Wesson was based on invidious racial discrimination. *See Hammond*, 669 F. Supp. at 1563 (emphasis in original) ("To the extent that any equal protection analysis is required [on the plaintiff's assertion of discrimination], absent the plaintiff's establishing a clearly protected liberty or property interest by the Constitution ..., this Court [must] look to see if persons similarly situated to the plaintiff have been treated differently ... [T]here is ***no*** evidence that any [individuals] in the same position as the plaintiff have been treated differently from the plaintiff ... . The plaintiff has offered the Court nothing on which to base h[er] equal protection claim. Accordingly, it is the opinion of this Court that the plaintiff's equal protection claim is without merit."). Further, the record is devoid of evidence that Wesson or any other school official acted due to purposeful discrimination. Under applicable federal law, the allegations made by Plaintiff are insufficient to show an equal protection violation and summary judgement is, therefore, due

12

to be granted in favor of Defendant Wesson on Plaintiff's equal protection claim. *Celotex Corp.*, 477 U.S. 317.

### III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendant Wesson's motion for summary judgment (*Doc. No. 21*), be GRANTED;

2. Judgment be ENTERED in favor of Defendant Wesson and against Plaintiff; and

3. This case be DISMISSED with prejudice.

The Clerk of the Court is DIRECTED to file the Recommendation of the Magistrate Judge and to serve a copy on the parties. The parties may file any objections to this Recommendation on or before **November 24, 2015**. Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which the parties object. Frivolous, conclusive or general objections will not be considered by the District Court.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE, this 10th day of November, 2015.

/s/ Susan Russ Walker  
SUSAN RUSS WALKER  
CHIEF UNITED STATES MAGISTRATE JUDGE